**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| **MATTHEW R. NEHMER** ) | |
| ) | |
| **Plaintiff**, ) | **Case No.** |
| ) | |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| **BAUER BUILT, INC.** ) | |
| **d/b/a Bauer Built Tire & Service** ) | |
| ) | |
| *Serve Registered Agent:* ) | |
| CSC-Lawyers Incorporating ) | |
| Service Company ) | |
| 221 Bolivar Street ) | |
| Jefferson City, MO  65101 ) | |
| ) | |
| **Defendant**. ) | |
| _____ ) | |

## COMPLAINT FOR DAMAGES

Plaintiff Matthew R Nehmer, by counsel, states the following as his Complaint for

Damages against Defendant Bauer Built, Inc.:

## INTRODUCTION AND NATURE OF THE CASE

1. This action arises from the Defendant's unlawful retaliation against Plaintiff, a dedicated store manager who was fired after fulfilling his legal and ethical obligation to report sexual harassment in the workplace.

2. Plaintiff was a valued employee who was nominated for "employee of the month" in consecutive months (July and August 2024) and who received consistent, positive customer reviews for his management and service.

1

3. Despite his positive performance, Plaintiff was fired three months after reporting an employee's complaint of sexual harassment to HR, and only one month after HR interviewed him and other employees during its investigation into the complaint.

4. The termination followed explicit anger and criticism from his supervisor, a Vice President of Sales who lived in Illinois, for allegedly "going over [his] head" to HR.

5. The alleged performance-based reasons for Plaintiff's termination were pretextual, as evidenced by Plaintiff's positive work record, lack of prior disciplinary action, and the suspicious timing of his termination shortly after HR completed its investigation into the harassment complaint.

6. Through this action, Plaintiff seeks redress for Defendant's violations of Title VII of the Civil Rights Act of 1964 and the Missouri Human Rights Act, which prohibit retaliation against employees who report workplace harassment or discrimination.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the action arises under federal law, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The parties also are of diverse citizenship.

8. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are so related to Plaintiff's Title VII claims that they form part of the same case or controversy.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) and 42 U.S.C. § 2000e-5(f)(3) in that the unlawful employment practices alleged herein were committed within this judicial district. Defendant also maintains a business location

2

in this judicial district, where Plaintiff would have continued to work but for the unlawful employment practices alleged herein.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff timely and dually filed on December 9, 2024, a Charge of Discrimination with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights.

11. Plaintiff subsequently received a Notice of Right to Sue from each administrative agency, Exhibits A & B hereto, thereby exhausting administrative remedies.

12. Plaintiff is timely filing this Complaint within 90 days of receiving the accompanying Notices of Right to Sue.

## PARTIES

13. Plaintiff Matthew R. Nehmer is a citizen of the State of Missouri residing in Johnson County, Missouri. Plaintiff worked for the Defendant from February 21, 2024, through October 22, 2024, as pled more specifically below.

14. Defendant Bauer Built, Inc. is a corporation organized under the laws of the State of Wisconsin with its headquarters in Durand, Wisconsin. Defendant operates over 40 tire and service centers in ten Midwestern states, one of which is in Kansas City, Missouri, where Plaintiff worked.

15. At all times pertinent to this Complaint, Defendant employed more than 15 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. Defendant was and is an "employer" within the meaning

3

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), as well as the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010(8),.

## FACTS

### *Plaintiff's Onboarding and Job Performance*

16. Commending on February 21, 2024, Plaintiff became the Store Manager at the tire and service center that Defendant owns and operates at 5150b E. Front Street in Kansas City, Missouri (hereinafter "Kansas City Tire Store"):



Aerial View of Defendant's Kansas City Tire Store
Industrial Location

17. Plaintiff's expected compensation as the Store Manager at the Kansas City Tire Store was approximately $110,000 per year, with potential bonuses bringing his total compensation package to $160,000-$180,000 per year.

18. A week after Plaintiff assumed his management position at the Kansas City Tire Store, he met at a restaurant location with his immediate supervisor, Martin Ruhaak ("Ruhaak"), Defendant's Vice President of Sales who was assigned at the time to the Defendant's Central Region.

4

19. During this meeting, which took place on February 28, 2024, Ruhaak told Plaintiff that the Kansas City Tire Store had experienced "a lot of problems for a lot of years" including significant issues with morale, culture, performance, and thefts—and that the Kansas City Tire Store was, for these and other reasons, regarded within the 40+-store company as the "problem child."

20. Further, Ruhaak told Plaintiff that because of these ongoing challenges, it would take Plaintiff "a year to a year and a half" to understand the business and learn how to manage its culture.

21. Additionally, Ruhaak emphasized during this meeting that Plaintiff should not "expect to see any drastic changes" for at least a year to a year and a half.

22. Ruhaak's statements during this meeting on February 28, 2024, rang true in part because they echoed similar statements that had been made to Plaintiff during his final interview for the Store Manager job. Those similar statements were made by Defendant's Vice President of Human Resources, Chelsea Schneider ("Schneider"), on January 12, 2024. Schneider likewise said that "KC is a big problem child for us" and that the company "expect[ed] a year to a year and a half before you get a handle on things."

23. Plaintiff responded to Ruhaak's February 28, 2024 statements by promising Ruhaak that—in accordance with Ruhaak's advice, if not express directives—he would "sit back and watch for the first six months," changing some things as needed but implementing no change of a substantial or dramatic nature.

24. Thereafter, Plaintiff performed his job duties extremely well and was recognized for his good work.

25. To illustrate, in July and August 2024, Defendant's upper management nominated Plaintiff to receive the Defendant's company-wide employee-of-the-month award.

26. Plaintiff likewise received consistent positive reviews from customers praising his management and customer service, including consistent positive reviews posted on the internet during August, September, and October 2024.

27. Before the incidents pled below, Plaintiff had no disciplinary actions, corrective actions, or reprimands of any kind during his employment with Defendant.

### *The Sexual Harassment Complaint*

28. In early July 2024, a representative from Defendant's Human Resources Department, Sarah High ("High"), whose job title is Human Resources Partner, contacted Plaintiff about an anonymous complaint that HR had received.

29. The anonymous complaint reported inappropriate comments of a sexual nature that allegedly had occurred at the Kansas City Tire Store.

30. High specifically instructed Plaintiff to report back to her or another representative of HR if he heard anything more about the anonymous complaint.

31. A few days later, Candace Leonard ("Leonard"), a female employee who worked at the Kansas City Tire Store under Plaintiff's supervision, informed Plaintiff that she was the employee who had made the anonymous complaint.

32. Leonard further shared with Plaintiff that while she was at work, she had inadvertently brushed up against the Assistant Manager of the Kansas City Tire

6

Store, Marcus Cloe ("Cloe"), at which point Cloe had stated to her: "***I'm going to have to go to the bathroom because I have something dripping down my leg***."

33. Following High's instructions, Plaintiff promptly relayed this information to High, who instructed Plaintiff also to inform Ruhaak of the alleged harassment.

### *Ruhaak's Hostile Response*

34. When Plaintiff told Ruhaak of Leonard's allegations, Ruhaak became furious with Plaintiff for allegedly "going over [his] head" by discussing the matter with HR as High had instructed.

35. Ruhaak also told Plaintiff that he "shouldn't have went to HR" because "I'm the one that's got to clean up the messes."

36. Ruhaak's anger targeting Plaintiff continued apace—indeed, as pled below, greatly intensified—until Plaintiff was fired

### *HR's Ensuing Investigation*

37. In September 2024, Defendant's HR Department sent representatives to the Kansas City Tire Store to conduct face-to-face interviews of various employees concerning Cloe's behavior and Leonard's complaint.

38. This onsite investigation led to increased tension in the Kansas City Tire Store, which further infuriated Ruhaak.

39. In direct response to the onsite investigation, while making explicit reference to the same, Ruhaak chastised Plaintiff in an increasingly hostile manner for reporting Leonard's allegations to HR in the first place, then cooperating with HR's representatives as they conducted the September 2024 investigation.

7

## *Plaintiff's Employment Termination*

40. On October 22, 2024, one month after HR completed its interviews at the Kansas City Tire Store, and approximately three months after Plaintiff had provided HR with Leonard's name, Ruhaak abruptly fired Plaintiff.

41. The purported reasons for Plaintiff's abrupt termination were "excessive break-ins" at the Kansas City Tire Store, and Plaintiff's alleged failure to "implement changes" and "keep the store clean."

42. Ruhaak cited these purported reasons notwithstanding the clear and unequivocal acknowledgements that he and Schneider had made earlier in 2024, both before Plaintiff was hired and afterwards, that:

    a. The Kansas City Tire Store had consistently been experiencing "a lot of problems for a lot of years";

    b. These problems included serious concerns over morale, culture, performance, and thefts;

    c. The Kansas City Tire Store was, for these and other reasons, considered the "problem child" among the stores that the company operates;

    d. It would take at least a year to a year and a half for an incoming Store Manager such as Plaintiff to better manage the store;

    e. Neither Plaintiff nor Ruhaak should expect to see any meaningful change for at least a year to a year and a half;

f.  Given Plaintiff's exemplary job performance, Defendant's upper management had nominated him to receive the company's prestigious employee-of-the-month award during consecutive months in July and August 2024; and

g.  Plaintiff had also received consistent positive reviews from customers praising his management and customer service, including reviews posted in August, September, and October 2024 on publicly available fora.

43. What is more, two weeks before Plaintiff's termination, Ruhaak admitted to Plaintiff that the Kansas City Tire Store looked good and that overall progress was being made. Examples of this progress include Plaintiff requesting security enhancements in August 2024. The requested security enhancements included defense lighting and cameras, which were approved the week before Plaintiff was fired.

44. In truth, Plaintiff lost his job because Ruhaak retaliated against him for forwarding Leonard's complaint to HR, then cooperating with HR's ensuing investigation. Under federal and state law, Defendant should be held liable for all resulting harms.

## <u>COUNTS</u>

### COUNT I: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

45. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

46. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a), prohibits employers from discriminating or retaliating against any employee because that employee has opposed any practice made unlawful by Title VII, or

9

because that employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

47. By reporting in good faith what Leonard told him to HR, Plaintiff engaged in protected activity under Title VII.

48. Likewise, by cooperating in good faith with HR's investigation into Leonard's complaints, Plaintiff engaged in protected activity under Title VII.

49. Defendant, through its agent Ruhaak, was aware of Plaintiff's protected activity.

50. Defendant, through its agent Ruhaak, subjected Plaintiff to adverse employment actions culminating in Plaintiff's employment termination on October 22, 2024.

51. Plaintiff's protected activity was a motivating factor for the adverse employment actions that Plaintiff suffered.

52. The causal connection between Plaintiff's protected activity and the adverse employment actions that Plaintiff suffered is evidenced by, among other factors:

   a. Ruhaak's explicit anger at Plaintiff for reporting Leonard's allegations of sexual harassment to HR;

   b. Ruhaak's explicit anger at Plaintiff for participating in HR's investigation into Leonard's complaints;

   c. Ruhaak's repeated chastisement of Plaintiff for engaging in the protected activity pled in the preceding two subparagraphs;

   d. The temporal proximity between Plaintiff engaging in the protected activity pled in the preceding two subparagraphs and Plaintiff's employment termination;

10

e.  The pretextual nature of the reasons that Ruhaak gave for Plaintiff's employment termination;

f.  Plaintiff's positive work record, including his nominations for employee of the month and his positive customer reviews; and

g.  The lack of any disciplinary action, corrective action, or reprimand in Plaintiff's employment history.

53.  Ruhaak's stated reasons for Plaintiff's termination were pretextual and not the true reason for his termination.

54.  Ruhaak's actual reasons for firing Plaintiff were to retaliate against Plaintiff for engaging in the protected activity pled above.

55.  Through Ruhaak's actions as pled above, Defendant violated Title VII.

56.  As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered and continues to suffer damages, including but not limited to:

a.  Lost wages and benefits;

b.  Diminished earning capacity;

c.  Emotional distress, including anxiety, humiliation, embarrassment, and damage to his professional reputation; and

d.  Other damages to be proven at trial.

57.  Defendant's conduct was outrageous and showed malice or reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to an award of punitive damages.

58.  Defendant should be held liable for all resulting harms.

## COUNT II: RETALIATION IN VIOLATION OF THE
## MISSOURI HUMAN RIGHTS ACT

59. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

60. The Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.070, prohibits retaliation or discrimination against any person who has opposed any practice prohibited by the MHRA or who has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing conducted pursuant to the MHRA.

61. By reporting in good faith what Leonard told him to HR, Plaintiff engaged in protected activity under the MHRA.

62. Likewise, by cooperating in good faith with HR's investigation into Leonard's complaints, Plaintiff engaged in protected activity under the MHRA.

63. Defendant, through its agent Ruhaak, was aware of Plaintiff's protected activity.

64. Defendant, through its agent Ruhaak, subjected Plaintiff to adverse employment actions culminating in Plaintiff's employment termination on October 22, 2024.

65. Plaintiff's protected activity was a motivating factor for the adverse employment actions that Plaintiff suffered.

66. The causal connection between Plaintiff's protected activity and the adverse employment actions that he suffered is evidenced by the factors pled in paragraph 52 above.

67. Ruhaak's stated reasons for Plaintiff's termination were pretextual and not the true reason for his termination.

68. Ruhaak's actual reasons for firing Plaintiff were to retaliate against Plaintiff for engaging in the protected activity pled above.

69. Through Ruhaak's actions as pled above, Defendant violated the MHRA.

70. As a direct and proximate result of Defendant's violations of the MHRA, Plaintiff has suffered and continues to suffer damages, including but not limited to:

   a. Lost wages and benefits;

   b. Diminished earning capacity;

   c. Emotional distress, including anxiety, humiliation, embarrassment, and damage to his professional reputation; and

   d. Other damages to be proven at trial.

71. Defendant's conduct was outrageous and showed evil motive or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

72. Defendant should be held liable for all resulting harms.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Matthew R. Nehmer respectfully requests that this Court:

   a. Enter judgment in favor of Plaintiff and against Defendant Bauer Built, Inc. on Counts I and II of this Complaint;

   b. Award Plaintiff compensatory damages against Defendant Bauer Built, Inc. for back pay, front pay, and lost benefits;

13

c. Award Plaintiff compensatory damages against Defendant Bauer Built, Inc. for emotional distress, humiliation, embarrassment, and damage to his professional reputation;

d. Award Plaintiff punitive damages against Defendant Bauer Built, Inc. in an amount to be determined at trial designed to punish the Defendant for its past misconduct and deter similar wrongdoing in the future;

e. Award Plaintiff pre-judgment and post-judgment interest as provided by law;

f. Award Plaintiff reasonable attorneys' fees, litigation expenses, and statutory costs as provided by Title VII and the MHRA; and

g. Grant Plaintiff such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**LAW OFFICES OF DOUGLAS L. CARTER, P.C.**

By: /s/ Douglas L. Carter
Douglas L. Carter    MO #35759
2345 Grand Blvd., Suite 1675
Kansas City, Missouri 64108
Tel: (816) 283-3500
Fax: (816) 283-3084
E-mail: doug@carter.law

*COUNSEL FOR PLAINTIFF*

14